IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BERT ROBERT CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV–22–88–JAR |
| ) | |
| KILO KIJAKAZI, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Bert Robert Clark (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is **AFFIRMED**.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800–01.

## Claimant's Background

The claimant was forty-five years old at the time of the administrative hearing. (Tr. 15, 26). He possesses at least a high school education. (Tr. 26). He has worked as a facility maintenance worker, military recruiter, and military supply specialist. (Tr. 26). Claimant alleges that he has been unable to work since January 13, 2019, due to limitations resulting from PTSD, high blood pressure, and minimal use of right hand. (Tr. 67).

## Procedural History

On June 24, 2020, Claimant protectively filed for disability insurance benefits pursuant to Title II (42 U.S.C. § 401, et seq.). Claimant's application was denied initially and upon reconsideration. After an administrative hearing, Administrative Law Judge Carol K. Bowen ("ALJ") issued an unfavorable decision on August 4, 2021. Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he retained

the residual functional capacity ("RFC") to perform light work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in failing (1) to follow the legally required standards in analyzing the medical opinion evidence from the state reviewing psychologist during her step-four RFC determination, (2) at step five by assigning jobs which required a reasoning level above Claimant's assigned RFC, (3) to attach re judicata to a previous claim thus de facto reopening the claim, and (4) to evaluate the significance of the VA's determination that Claimant was unemployable.

## Step-Four Determination

In her decision, the ALJ determined Claimant suffered from the severe impairments of obesity, right third finger flexor tendon injury, neuropathy, posttraumatic stress disorder (PTSD), major depressive disorder, generalized anxiety disorder, cannabis abuse, stimulant abuse, and mild neurocognitive disorder. (Tr. 17). The ALJ concluded that Claimant retained the RFC to perform light work. Specifically, the ALJ found that Claimant is able to stand/walk for a total of four hours out of an eight hour workday with no restrictions on his ability to sit. Claimant can frequently handle, finger, and feel bilaterally. As for Claimant's mental limitations, the ALJ opined that Claimant is capable of the basic mental demands of unskilled work as he can understand, remember, and carry out simple tasks, and make simple work-related instructions. Claimant can also respond appropriately to supervision, co-workers, and usual work

situations as well as adapt to changes in a routine work-setting. Further, Claimant can focus two hour periods with normal breaks and can otherwise maintain attention, concentration, and pace to complete simple tasks independently and appropriately. Although Claimant may have no public interaction, he is capable of occasional interaction with supervisors and co-workers that is routine and superficial, such that the interaction consists of exchanging or providing concrete information or tangible items. (Tr. 20).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs at light exertional level of small product assembler, dispatching router, and merchandise marker as well as jobs at sedentary exertional level of paster/trimmer, printed circuit board checker, and addressing clerk. (Tr. 27). As a result, the ALJ found Claimant was not disabled at any time from January 30, 2019, the alleged onset date, through the date of the decision, August 4, 2021. (Tr. 28).

Claimant contends the ALJ arrived at a faulty RFC as she failed to include limitations assigned by the state agency psychologist as result of her improper consideration of the medical opinion evidence. "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. Rul. 96–8p, 1996 WL 374184, *7 (July 2, 1996). The ALJ must also discuss the

individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id.* He must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

Claimant specifically contends that although the ALJ found the opinion of Dr. Stephanie Crall to be persuasive she did not include limitations assigned by Dr. Crall in her RFC determination. Specifically, Claimant suggest that the ALJ did not include Dr. Crall's findings of: (1) a marked limitation in remembering, carrying out, and understanding detailed instructions, (2) limitations in getting along with co-workers, (3) moderate limitation in work changes, and (4) limitation to only simple tasks.

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. See 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship,

frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Generally, the ALJ is not required to explain how the other factors were considered. See 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. See 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). She may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability"). If she rejects an opinion completely, the ALJ must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

Here, the ALJ agreed with the opinion of the state reviewing psychiatrist, Dr. Crall, finding that her opinion was largely consistent with the consultative psychological evaluation performed by Dr. Horton and was supported by the minimal treatment record pertaining to Claimant's mental health, including the lack of prescribed psychotropic medications. (Tr. 24–25). Dr. Crall opined that Claimant could understand, recall, and perform simple tasks. (Tr. 89) Further, she found Claimant can focus for two hour period with routine breaks and otherwise pace and persist for an eight hour work day and forty hour work week. (Tr. 89) Due to Claimant's moderate limitation in interacting with other, Dr. Crall opined that Claimant is able to interact with supervisors and coworkers only on a superficial bias and is unable to tolerate contact with the general public. (Tr. 88–89). Finally, Dr. Crall concluded that Claimant can adapt to a work

environment with some changes due to his moderate limitation in his ability to respond to changes. (Tr. 88–89).

Despite Claimant's contentions, the ALJ considered the medical evidence opinion evidence of Dr. Crall, addressed these limitations in his analysis and included them in the ultimately assigned RFC. It is clear to this Court that the ALJ determined the RFC through the adoption of the state reviewing physician Dr. Crall's opinion. Further, nothing in the record suggests that any greater limitations should be imposed in the forming of Claimant's RFC. The Court finds no error in the ALJ's consideration of the state reviewing psychiatrist opinion which she used as the basis of her RFC finding.

### Step-Five Determination

Claimant first argues that the ALJ erred at step five as the jobs cited did not align with the assigned RFC as the reasoning level required, reasoning level two, was inconsistent with the mental limitations in the assigned RFC. The RFC outlined by the ALJ limits Claimant to un-skilled work as the Claimant can only "understand, remember and carry out simple tasks, make simple work-related decisions, accept instruction and respond appropriately." (T. 20). The VE provided that with this RFC Claimant could perform six jobs all of which required a reasoning level of two. Reasoning level two requires a claimant to "[a]pply commonsense understanding to carry out detailed but uninvolved written instructions. Deal with problems involving a few concrete variables in or from standardized situations." *See* DOT app. C, Components of the Definition Trailer, 1991 WL 688702.

In *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005), the Tenth Circuit found that jobs with a reasoning level of three were inconsistent with an RFC limiting a claimant to "simple and routine work tasks." It determined, however, that "level-two reasoning appears more consistent" with such an RFC. *Id.*; *see also Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (rejecting the argument that "simple, repetitive and routine work" should be construed as a limitation to jobs with a reasoning-level of one). This Court and others have routinely determined that level-two reasoning is consistent with simple tasks. See, e.g., *Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. Mar. 13, 2017)(finding "simple work" consistent with reasoning level of two); *Olsen v. Saul*, 2019 WL 4318486, at *4 (E.D. Okla. Sept. 12, 2019)(finding "simple tasks" consistent with reasoning level of two); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla., May 6, 2016) (finding "the ALJ properly relied on the jobs identified by the VE with a reasoning level of two" where the RFC limited the claimant to "simple, routine, repetitive instructions.").

Although *Hackett* specifically dealt with a question regarding jobs at a reasoning level of three, the Tenth Circuit has relied upon the portion of Hackett finding that a reasoning level of two was consistent with an RFC requiring "simple and routine work tasks" in the unpublished case of *Stokes v. Astrue*, 274 Fed. Appx. 675 (10th Cir. 2008). In *Stokes,* the court addressed whether jobs with a reasoning level of two were consistent with "simple, repetitive and routine work" and it relied upon *Hackett* to reject the argument that "simple, repetitive

10

and routine work" should be construed as a limitation to jobs with a reasoning-level of one. *Id.*

A review of the hearing testimony reveals that the hypothetical posed to the VE, which was later incorporated by the ALJ into the RFC, included, among others, limitations that Claimant could "understand, remember and carry out simple tasks, make simple work-related decisions, accept instruction and respond appropriately." (Tr. 55). Based on the ALJ's hypothetical question at this skill level, the VE testified Claimant could perform the jobs of small product assembler, dispatching router, merchandise maker, paster/trimmer, printed circuit board checker, and addressing clerk. (Tr. 58–59). Based upon *Hackett* and *Stokes*, this Court finds that there is no conflict between the ALJ's RFC limiting Claimant to simple tasks and decisions and the level two reasoning jobs.

### Res Judicata

Claimant next contends that because the ALJ failed to attach res judicata to Claimant's prior claim and based her present determination by considering the prior record, she de facto reopened the prior claim. Plaintiff asserts that "[s]ome have suggested that the prior case will be deemed reopened if the ALJ does not apply res judicata, and makes a determination considering the prior record."

In support, Plaintiff relies on *Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996). In addition to being non-binding on this Court, *Wolfe* is distinguishable. There, the court held a third ALJ reopened a claim by finding the claimant's educational level was "marginal" and determining two ALJs in

11

prior claims erred when they found the claimant's educational level was "limited." *Id.* at 1079 ("By determining that the first two ALJs had erred, the third ALJ went beyond evaluating evidence for the purpose of making a reasoned determination of its res judicata effect.").

Here, the ALJ did not find the first ALJ erred moreover the ALJ's opinion in the present case applied to an entirely different time period. Thus, the ALJ did not reopen the previous case and res judicata has not been established here. *See* 20 C.F.R. § 404.957(c)(1) ("The doctrine of res judicata applies in that we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action[.]").

### Consideration of Other Administrative Findings

Claimant lastly contends that the ALJ failed to properly evaluate the significance of the VA's finding the Claimant was 100 percent individually unemployable. Specifically, Claimant argues that the ALJ was required to explain why she found this determination to be unpersuasive. Claimant cites to 10th Circuit case, *Baca v. Dep't of Health & Hum. Servs.*, 5 F.3d 476, 480 (10th Cir. 1993), in support of his assertion that the ALJ must consider finding of other administrations.

However, for claims filed after March 27, 2017, a differing standard applies than that asserted by Claimant. While it is still true that "a decision by any other governmental agency or a nongovernmental entity about whether you are

disabled, blind, employable, or entitled to any benefits" is not binding on disability determinations made by the social security administration, as they are based on different rules. 20 C.F.R. § 404.1504. An ALJ is now not required in her opinion to preform "any analysis . . . about a decision made by any other governmental agency or a nongovernmental entity about whether [Claimant is] disabled, blind, employable, or entitled to any benefits." *Id*. The ALJ should, however, consider underlying evidence of such a claim made to another agency. *Id*.

Here, the ALJ followed the appropriate standards set forth in 20 C.F.R. § 404.1504. The ALJ noted this standard and asserted that generally theses opinions lack probative value in social security cases, but nonetheless stated that she considered the underlying evidence from the VA decision. The ALJ made no error in not considering or analyzing the conclusions of the VA decision.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, the Magistrate Judge finds for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

**IT IS SO ORDERED** this 28th day of September, 2023.

_____
**JASON A. ROBERTSON**
**UNITED STATES MAGISTRATE JUDGE**